UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MARIE WINFIELD and JASON WINFIELD, | : :  : |
| Plaintiffs, | : : |
| v. | :  Case No. 2:08-cv-278 : |
| DANIEL TROTTIER, AMY NOLAN, and THE STATE OF VERMONT, | : : : : |
| Defendants. | : |

**OPINION and ORDER**

Plaintiffs Marie Winfield and her son, Jason Winfield, have filed a Complaint under 42 U.S.C. § 1983 against Vermont State Troopers Daniel Trottier and Amy Nolan, and the State of Vermont ("State") (Doc. 1). The Complaint alleges that the Troopers violated the Winfields' rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article Eleven of the Vermont Constitution (counts one through ten), and alleges state law tort claims (counts eleven through eighteen) against the Troopers and the State. The Troopers and the State move to dismiss the state law tort claims in counts eleven through eighteen for lack of subject matter jurisdiction (Doc. 7).[1]

**FACTUAL BACKGROUND**

The Winfields' claims stem from an incident on May 26, 2007,

---

[1] The Troopers also move to extend the deadline for answering the Complaint pending the Court's resolution of their Motion to Dismiss (Doc. 8). This unopposed motion is granted.

when Ms. Winfield's vehicle was stopped as the Winfields were traveling north on Interstate 89 through Vermont. Taking the facts alleged in the Complaint as true, the Winfields were driving from Massachusetts to Canada to visit Ms. Winfield's critically ill father when Trottier stopped Ms. Winfield for speeding. Ms. Winfield does not contest that she was speeding. After obtaining Ms. Winfield's license, registration, and proof of insurance, Trottier asked Ms. Winfield questions about several different subjects, including her speed, destination, driving record, last trip to Canada, and planned length of her trip. After Ms. Winfield answered these questions, Trottier went to his cruiser with Ms. Winfield's documents.

Returning to Ms. Winfield's vehicle, Trottier asked Mr. Winfield to provide identification, which he produced. Trottier then ordered Ms. Winfield to get out of the car, and asked her whether she was carrying guns, large sums of money, or bombs. After Ms. Winfield answered all of these questions in the negative, Trottier ordered Mr. Winfield out of the car. Trottier patted Mr. Winfield down, and asked him questions about his travel with his mother. During the pat-down, Trottier found a set of keys in Mr. Winfield's pocket and took them.

Around this time, Nolan arrived at the scene. While Trottier searched Ms. Winfield's vehicle, Nolan guarded the Winfields on the side of Interstate 89. The Complaint does not

reflect whether either of the Winfields gave Trottier consent to search the car.  Trottier searched the entire vehicle, including the passenger compartment, the trunk, the engine compartment, and the undercarriage.  Trottier also searched the Winfields' luggage, including Ms. Winfield's handbag, and he seized and read Ms. Winfield's mail.  After the search, Trottier issued Ms. Winfield a traffic citation for speeding, and the Winfields were permitted to resume their journey.  The Winfields are citizens of the United States and are of African descent.

**DISCUSSION**

The Winfields contend that the Troopers unreasonably searched and seized them and their property in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article Eleven of the Vermont Constitution, and that they were discriminated against because of their race in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  The Winfields assert state law tort claims against the Troopers and the State for false imprisonment, negligent infliction of emotional distress, negligence, and invasion of privacy.

**A.  The State's Motion to Dismiss**

The State moves to dismiss all counts against it (the state law tort claims in counts eleven through eighteen) for lack of subject matter jurisdiction.  Federal courts cannot "entertain a

suit brought by a citizen against his own State" unless the state consents to being sued in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98, 99 (1984); *see also* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Here, the State has preserved its right to sovereign immunity. *See* Vt. Stat. Ann. tit. 12, § 5601(g) ("Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution"). The Winfields concede sovereign immunity and do not oppose the State's Motion to Dismiss. *See* Pl.'s Opp'n 1, 4 (Doc. 9). Accordingly, the Court **grants** the State's Motion.

**B. Trottier and Nolan's Motion to Dismiss**

The Troopers also move to dismiss the Winfields' state law tort claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal under Rule 12(b)(1) is inappropriate "'unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403 (2d Cir. 2006) (quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). "The threshold to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(1) is thus lower than that

4

required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir. 1989). When a defendant alleges insufficient pleading under Rule 12(b)(1), "'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff.'" *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001)(quoting *Sweet*, 235 F.3d at 83). The district court "does not, of course, decide a case on the merits in order to decide if it has jurisdiction. 'Jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action.'" *Id.* at 142 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Vermont law gives state courts exclusive jurisdiction over certain claims brought against state employees:

> When the act or omission of an employee of the state acting within the scope of employment is believed to have caused damage to property, injury to persons, or death, the exclusive right of action shall lie against the state of Vermont; and no such action may be maintained against the employee or the estate of the employee.

Vt. Stat. Ann. tit. 12, § 5602(a). As a result, the Troopers argue that the Winfields' state law tort claims are barred. The exclusive jurisdiction set forth in § 5602(a), however, does not apply to "gross negligence or willful misconduct" by state employees. *See* Vt. Stat. Ann. tit. 12, § 5602(b). Thus, the Winfields' state law tort claims will survive a motion to dismiss under Rule 12(b)(1) if they allege that the Troopers' actions

5

amounted to gross negligence or willful misconduct. The Troopers contend that the Complaint does not meet this standard.

The federal rules contain a liberal standard for determining whether a claim has been sufficiently pled, and "[p]leadings must be construed so as to do justice." *See* Fed. R. Civ. P. 8(d),(e). In addition, the standards for establishing gross negligence and willful misconduct are straightforward. "[T]o maintain a claim of gross negligence, a plaintiff must present facts that show an individual defendant 'heedlessly and palpably violated a legal duty owed to plaintiff.'" *Amy's Enters. v. Sorrell*, 817 A.2d 612, 616 (Vt. 2002)(citation omitted). "Willful misconduct" is defined as "misconduct committed voluntarily and intentionally." *Black's Law Dictionary* 1014 (7th ed. 1999). Intentional infliction of emotional distress claims "can be sustained only where the plaintiff demonstrates 'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress.'" *Colby v. Umbrella, Inc.*, 955 A.2d 1082, 1089 (Vt. 2008) (quotations omitted).

Trottier and Nolan contend that the elements of gross negligence or willful misconduct are not contained within the Complaint's expressly alleged tort claims.[2] While gross

---

[2] The Troopers cite two cases in which tort claims against individual state employees were dismissed on grounds of sovereign immunity. *See* Defs.' Mot. 4 (Doc. 7). In both cases the plaintiffs did not plead gross negligence or willful misconduct. *See Amy's Enters.*, 817 A.2d at 616 ("No such allegation [of gross

6

negligence and willful misconduct can be separately pled, they can also be reached by adding aggravating elements to other tort claims. *See, e.g., Powers v. Lackey*, 1 A.2d 693, 694 (Vt. 1938)("There is no concrete rule by which the existence of gross negligence can be determined, for each case must be judged according to its own facts.") (citation omitted). In some cases, the only elements separating negligence from gross negligence may be "heedlessness" and "palpability." *See Amy's Enters.*, 817 A.2d at 616. Similarly, while an unwarranted invasion of privacy by law enforcement may amount to misconduct, a showing of willfulness elevates this claim to one involving willful misconduct.

While the Complaint states causes of action for torts such as negligence and false imprisonment, additional elements may transform these into claims involving gross negligence or willful misconduct. Moreover, reviewing the Complaint as a whole, it alleges both gross negligence and willful misconduct against the Troopers. At the outset, the Complaint states that "the Plaintiffs allege that the acts complained of constitute gross negligence or willful misconduct." Compl. ¶ 1. In addition, the

---

negligence or willful misconduct] is made against the individual defendants in this case."); *Powers v. Office of Child Support*, 795 A.2d 1259, 1266 (Vt. 2002) ("we note that the complaint does not make any claims against any individual defendant that could be shown to constitute gross negligence."). In contrast, as discussed below, the Complaint here alleges gross negligence and willful misconduct.

7

Complaint specifically alleges that the Troopers: (1) falsely imprisoned the Winfields "with willful or reckless disregard for their rights;" (2) "acted . . . intentionally or with reckless disregard of the probability of causing the Plaintiffs emotional distress;" (3) breached their duties "with gross, reckless and/or deliberate indifference to the Plaintiffs' rights;" and (4) wrongfully invaded the Winfields' privacy by conducting unlawful searches, and that those unlawful searches were "intentional, substantial, and highly offensive to a reasonable person." *Id*. at ¶¶ 68, 72, 75, 81. Although the headings for counts eleven through eighteen describe the claims as simple torts (for example, negligence and false imprisonment), the individual counts and the Complaint in its entirety clearly allege gross negligence and willful misconduct.

Because the Complaint sufficiently alleges gross negligence and willful misconduct against the Troopers, the Winfields' state law tort claims are not barred. The Troopers' Motion to Dismiss is therefore **denied**.

**CONCLUSION**

For the foregoing reasons, the Court **grants** the State's Motion to Dismiss the Complaint (Doc. 7) and **denies** the Troopers' Motion to Dismiss Counts Eleven through Eighteen (Doc. 7).

Dated at Burlington, Vermont this 15th day of July, 2009

/s/ William K. Sessions III
William K. Sessions III
Chief Judge